ANDREW J. TUCK *vs.* OLIVER MOSES & others.

*Replevin bond—construction of. Judgment for return final and conclusive— not changed by amended return. Damages—evidence in mitigation of.*

If a replevin bond be not "in double the value of the goods to be replevied," but good at common law and "conditioned as in the prescribed form of the writ," the condition will receive the same construction as if the bond were a statute bond.

The judgment for a return is the final judgment in replevin, and is conclusive upon the parties as to the matters embraced within it.

ε

An action of replevin is not disposed of until the question of return of the property is acted upon, notwithstanding the writ may have been abated upon the ground that the penal sum of the bond was too small; and until then, both parties are in court with a legal right to be heard.

The officer's return upon a replevin writ is a part of the record; and when a judgment for return has once been rendered, an amendment of the officer's return cannot change or control it.

In an action upon a replevin bond, it is competent for the defendants to show in mitigation of damages that since the taking by the replevin writ, the plaintiff's interest in whole or in part has ceased to exist, the actual damages to the plaintiff or those he represents being the simple question involved.

A defendant in replevin is entitled to the value of the property replevied at the time of rendition of judgment for a return.

A large quantity of wood having been replevied from an attaching officer, the actions in which the attachments were made proceeded to judgment and execution, and the full value of the word was insufficient to satisfy the executions. The repleven writ was abated because the replevin bond was not "in double the value of the goods to be replevied;" but it was good at common law, and "conditioned as in the prescribed form of the writ." Judgment was thereupon rendered for a return, but not complied with. In an action upon the bond, *Held*, That the market value of the wood having increased since it was replevied, the defendants were liable, (1) for the value of the wood at the date of the judgment for return, with interest at six per cent from the date of that judgment to the date of the judgment on the bond; (2) the cost in the replevin suit with interest for the same time; and (3) for a sum equal to twelve per cent on the value of the wood when replevied from the date of the judgment in the suit in which it was attached, to the date of the judgment for return.

ON REPORT.

DEBT on a replevin bond, dated Dec. 16, 1862, given by the city of Bath as principal, and Oliver Moses and others as sureties, and conditioned as follows:

"Whereas, the said city of Bath has this day sued out of the clerk's office of the supreme judicial court for the county of Franklin, a writ of replevin against A. T. Tuck, for nine hundred and fifty-two cords of wood, attached on sundry writs against the Androscoggin Railroad Company, of the value of twenty-eight hundred and fifty-six dollars, now taken by the said Tuck, in said county. . . Now if the said city of Bath shall prosecute the said replevin to final judgment, and pay such damages and costs as the said A. T. Tuck shall recover against them, and shall also return

and restore the same goods and chattels in like good order and condition as when taken, in case such shall be the final judgment in said suit, then this obligation shall be void, otherwise to remain in full force."

The replevin writ commanded the coroner "to replevy . . . four hundred cords of wood in the wood-shed of the Androscoggin Railroad Company at Farmington, . . . valued at twelve hundred dollars; also, forty cords of wood in Wilton, near the depot, . . . of the value of one hundred and twenty dollars; also, fifty cords of wood near the "Great Fill" in Jay, of the value of one hundred and fifty dollars; also, four hundred and fifty cords of wood along both sides of the railroad, a little west of the North Jay depot, . . . of the value of thirteen hundred and fifty dollars; also, twelve cords of wood in the town of Jay, of the value of thirty-six dollars,—all of the value of twenty-eight hundred and fifty-six dollars, and the same attached by the said defendant and detained by him at the places described," etc., . . . "provided they, the said city of Bath, shall give bond to the said A. T. Tuck, with sufficient sureties, in the sum of fifty-six hundred and twelve dollars, being twice the value of the said goods and chattels," etc.

The return upon the replevin writ, dated Dec. 19, 1862, was of the following tenor:

"By virtue of this writ, having first taken the bond required by law, I have this day replevied the wood within mentioned, and have delivered the same to the said city of Bath, the plaintiffs; and afterwards, on the same day, I summoned the said Andrew T. Tuck, within named, to appear at the within-named court, as within commanded, by reading this writ to him, aloud in his presence and hearing, and I return the bond which I have taken, herewith, as within directed."

On motion of the defendant in replevin (present plaintiff), the writ of replevin was abated because the penal sum of the bond was one hundred dollars less than double the alleged value of the wood replevied. Thereupon, on Nov. 18, 1865, a judgment for return

was rendered.    The judgment, omitting the formal parts, was as follows :

" In a plea of replevin, for that the said A. T. Tuck, on the twelfth day of December, at said Farmington, unlawfully and without any justifiable cause, took the goods and chattels of the said city of Bath, as aforesaid (to wit, ' four hundred cords of wood in the wood-shed of the Androscoggin Railroad Company at Farmington, and between that and the engine-house and near the railroad depot, valued at twelve hundred dollars ; also, forty cords of wood, being along the south line of said railroad track in Wilton, near the depot, and also on the north side of said railroad track, of the value of one hundred and twenty dollars ; also, fifty cords of wood near the " Great Fill," in Jay, of the value of one hundred and fifty dollars ; also, four hundred and fifty cords of wood along both sides of the railroad, a little west of the North Jay depot, being all the wood in possession of said company, Sept. 9, 1862, and all purchased by them since, of the value of thirteen hundred and fifty dollars ; also, twelve cords of wood in the town of Jay, of the value of thirty-six dollars,—all of the value of twenty-eight hundred and fifty-six dollars,—(and the same attached by said defendant and detained by the said Tuck, at the places above described, and all being the property of the city of Bath, county of Sagadahoc),' and them unlawfully detained to this d›y, to the damage of the said city of Bath (as they say), the sum of three thousand dollars.

" This action was commenced for and entered at the April term of this court, A. D. 1863, when the said defendant appeared and filed his motion in writing, that said writ might be° abated, and prayed that the court would order and adjudge, that all of said wood, except the last-named parcel of wood containing twelve cords, to wit, the nine hundred and forty cords of wood first named in said writ, should be returned and restored to said defendant, and that said defendant should be awarded his damages for the taking and detention of said wood and his costs.    And thence this action was continued from term to term until the April term of said court, A. D. 1865, when the court ordered and adjudged that said writ should

be abated. And thence this action was further continued "to the present term. And now at this term all the premises being seen and fully understood, it is considered, ordered, and adjudged by the court, that the property replevied, except twelve cords not claimed, to wit, that said four parcels of wood first named in said writ, amounting to nine hundred and forty cords of wood, and being all the wood described in said writ, except said twelve cords last named in said writ not claimed by said defendant, be returned and restored to the said Andrew T. Tuck, to be held by him irrepleviable by the plaintiffs. And, further, that the said Andrew T. Tuck recover judgment against the said city of Bath, in this action, for his costs of suit taxed at fifteen dollars and sixty-eight cents."

On September 9th, the present plaintiff, as deputy-sheriff, had attached the wood as the property of the Androscoggin Railroad Company, on a writ in favor of one Dyar, and between that time and December 2d, following, he attached the same wood subject to the former attachment on four other writs. All of these actions were entered and judgments recovered thereon. Dyar's judgment was recovered April 21, 1863, and the others on October 21st, following. Execution issued on Dyar's judgment April 23, 1863, and was placed in the hands of the plaintiff in this action, who thereupon made return thereon that all the wood attached on the original writ had been replevied out of his hands by virtue of a replevin writ in favor of the city of Bath, on Dec. 19, 1862, etc. And a similar return was made on each of the other executions Oct. 24, 1863.

At the September term, 1867, the defendants were defaulted, and Oliver L. Currier, Esq., was appointed master in chancery, to hear the evidence and report the facts bearing on the question of damages; and at the March term, 1868, made his report, wherein he found, as matter of fact, that at the time of the attachment of the wood replevied on the several writs against the Androscoggin Railroad Company, the wood was the property of said company, and liable to attachment for the debts of the company; that the value of the nine hundred and forty cords of wood, at the time of

replevying the same, was twenty-eight hundred and twenty dollars; that the value of the same at the time of rendition of judgment of return (Nov. 18, 1865), if the same had been actually returned in like good order and condition as when taken, would have been forty-six hundred and ninety-five dollars.

" That acting upon parol evidence, the quantity of wood actually replevied and delivered by the coroner to the agent of the city of Bath, was less than was attached, a portion of it having been consumed or removed by the Androscoggin Railroad Company after it had been attached and before it was replevied; and that the value of the wood per cord was the same when replevied as when attached.

" By the same kind of evidence, it is shown that Joseph A. Linscott was the agent of the city of Bath, to take delivery of the wood from the officer who replevied the wood, and that he wrote the coroner's original return on the replevin writ at his request; that said Linscott went with the coroner, on the 19th December, 1862, and pointed out to him the several parcels of wood at the places described in the replevin writ to be replevied, and took delivery of the wood actually replevied, as the agent of the city of Bath. That said Linscott, at the same time, directed the coroner to return, as replevied by him, all the wood at the several places where situated, which had been attached as described in the replevin writ, whether it had been before consumed or removed or not, so as to have the whole matter settled in one suit, and the coroner's return was accordingly so made. The number of cords of wood attached is not found to be less than the number described in the replevin writ, nor less than the number described in the record of the judgment for a return, except twelve cords not claimed. No wood was replevied that had not been previously attached by Tuck.

The quantity and value of the wood actually replevied and delivered by the coroner to the agent of the city of Bath, on Dec. 19, 1862, as shown by parol evidence, was six hundred (600) cords,—at that time of the value of $1560. If this wood had been

returned when judgment was rendered, for a return on Nov. 18, 1865, in like good order and condition as when taken, the value of it then would have been $3040."

At the April term, 1867, the coroner, who served the replevin writ, obtained leave to amend his return according to the facts, and thereupon changed it, so that the part pertaining to the quantity of wood replevied, as amended, read as follows: "I have this day replevied so much of the wood within mentioned as I can find in the various places named in said writ and no more, and have delivered the same," etc.

The case was reported to the full court, who were to consider the facts found by the master upon legal testimony, and such documents as were admissible, and render judgment for such damages as the law requires, the law court to have all the powers of a judge at *nisi prius*.

*J. C. Woodman*, for the plaintiff.

1. The bond, by referring to the writ as a "writ of replevin against the said A. T. Tuck for 952 cords of wood, attached on sundry writs against the Androscoggin Railroad Company," estops the defendants to deny the quantity of wood replevied. *Bean v. Parker*, 17 Mass. 600, 601; *Cordis v. Sager*, 14 Maine, 477; *Cady v. Eggleston*, 11 Mass. 285; *Milliken v. Coombs*, 1 Maine, 346; *Cutler v. Dickinson*, 8 Pick. 387; *Heard v. Lodge*, 20 Pick. 58; 1 Greenl. Ev., § 23; 2 Starkie Ev., 30, 31; *Huggeford v. Ford*, 11 Pick. 223; *Middleston v. Bryan*, 3 M. & S. 155; *Swift v. Barnes*, 16 Pick. 194; *Howe v. Handley*, 28 Maine, 248; *Parker v. Simonds*, 8 Met. 212.

The finding of the master also concludes the defendants upon this point.

2. The parol evidence before the master as to quantity of wood actually replevied was not admissible. The quantity was before the court on motion for a judgment of return. The plaintiff's right to recover on his bond depends upon the judgment in replevin. *Thomas v. Spofford*, 46 Maine, 411. "The sureties are bound to

perform what the principal was adjudged to perform, or must pay damages as an equivalent for performance." *Pettigrove* v. *Hoyt*, 11 Maine, 69. After abatement, then comes the question what judgment shall be rendered. R. S., c. 96, § 11. A return will not be ordered when in equity it ought not to be returned, though the defendant in replevin has judgment in his favor in the suit. *Bath* v. *Miller*, 53 Maine, 316; *Wheeler* v. *Train*, 4 Pick. 168; *Simpson* v. *McFarland*, 18 Pick. 429, 433; *Whitwell* v. *Wells*, 24 Pick. 33; *Bartlett* v. *Kidder*, 14 Gray, 452; *Ingraham* v. *Martin*, 15 Maine, 375. The officer's return is proper evidence upon this question. *Slayton* v. *Chester*, 4 Mass. 479; *Stinson* v. *Snow*, 10 Maine, 264.

All the facts passed upon by the judgment of return are settled, and by that judgment Bath and sureties are estopped. *Bath* v. *Miller*, 53 Maine, 316, 317, 318. No defense can be permitted on this question which existed prior to that judgment. *Thatcher* v. *Gammon*, 12 Mass. 269; *Flint* v. *Sheldon*, 13 Mass. 453; *Guinard* v. *Heysinger*, 15 Ill. 288; *Bird* v. *Smith*, 34 Maine, 68; *Noble* v. *Merrill*, 48 Maine, 140. The wood was constructively replevied, and the defendants ought not to be allowed to deny it. *Cady* v. *Eggleston*, 11 Mass. 285; *Milliken* v. *Coombs*, *supra*.

3. The mutilated return comes too late. It cannot affect the judgment. *Davis* v. *Putnam*, 5 Gray, 321.

4. It does not contradict the original one.

5. The object of amending returns is to uphold and not to destroy. The court cannot change the record under color of an amendment. *Limerick*, petitioners, 18 Maine, 186; *Collins* v. *Douglass*, 1 Gray, 167; *Wolcott* v. *Ely*, 2 Allen, 340; *Stanley* v. *Stanley*, 26 Maine, 198; *Haynes* v. *Small*, 22 Maine, 16.

On the question of amendment, counsel also cited *Sherman* v. *Smith*, 4 Cush. 410; *Cunningham* v. *Hobart*, 7 Gray, 424; *Whiting* v. *Cook*, 8 Allen, 63; *Davis* v. *Maynard*, 9 Mass. 242; *Thatcher* v. *Miller*, 13 Mass. 270; *Williams* v. *Brackett*, 8 Mass. 240; *Freeman* v. *Paul*, 3 Maine, 260; *Emerson* v. *Upton*, 9 Pick. 167; *Perry* v. *Dover*, 12 Pick. 211; *Hovey* v. *Wait*, 17 Pick. 196; *Haven* v.

*Snow,* 14 Pick. 28; *Varnum* v. *Bissell,* 14 Pick. 191; *Means* v. *Osgood,* 7 Maine, 146; *Berry* v. *Spears,* 13 Maine, 187; *Bannister* v. *Higginson,* 15 Maine, 77; *Russ* v. *Gilman,* 16 Maine, 211; *Hobbs* v. *Staples,* 19 Maine, 219; *Miller* v. *Miller,* 25 Maine, 110.

6. The defendants were adjudged to return on Nov. 18, 1865, nine hundred and forty cords of wood, but they have not done it. What will be an equivalent?

The plaintiff in replevin is bound by his valuation of the property in the writ; but the defendant in replevin is not. *Gordon* v. *Jenney,* 16 Mass. 465; *Parker* v. *Simonds,* 8 Met. 212; *Swift* v. *Barnes,* 16 Pick. 195; *Howe* v. *Handley,* 28 Maine, 251; *Thomas* v. *Spofford,* 46 Maine, 410. He is entitled to the rise. *Cook* v. *Lothrop,* 18 Maine, 201. The plaintiff has lost the value of the wood at the time of judgment for return. The bond entitles the plaintiff to that amount. See *Swift* v. *Barnes, supra;* and *Parker* v. *Simonds,* 8 Met. 211.

7. The plaintiff is entitled to incidental damages. "Damages for taking and costs." R. S. c. 96, § 11. "And twelve per cent on the value of the goods while the service of the execution is delayed" by replevin. R. S. c. 96, § 12. And these "do not go in the discharge of the judgment." § 14. When no damages have been awarded for delay in the service of the creditor's execution in the replevin suit, the defendant in replevin may recover in his suit on the bond damages for such delay, both before and after judgment in the replevin suit, and down to the day when judgment is rendered on the bond. *Huggeford* v. *Ford,* 11 Pick. 223; *Dillingham* v. *Smith,* 30 Maine, 383; *Same* v. *Same,* 32 Maine, 183; *Smith* v. *Dillingham,* 33 Maine, 384, 387; *Thomas* v. *Spofford,* 46 Maine, 408. The ordinary damages for detention before the creditor is delayed in his execution by the replevin and the penal damages given afterwards, have been given in the same action. *Huggeford* v. *Ford, supra.*

8. It makes no difference that the bond was not in accordance with the statute. The penal damages do not depend upon the

legality of the writ or bond, but upon the express language of R. S. c. 96, § 12. How shall these damages be recovered if no bond is taken? The statute provides no remedy; but *ubi jus ibi remedium.* And this maxim gave occasion to the first invention of "action on the case," the Stat. of Westminster, 2 (13 Edw. I. c. 24), being only in affirmance of the common law. Broom's Maxims, 149. Every statute made against an injury, mischief, or grievance, impliedly gives a remedy; for if no remedy is expressly given, the injured party may have one on the special circumstances of the case. 1 Chit. Pl. 134; *Bristow* v. *Wright,* Doug. 665; *Arnitt* v. *Garrett,* 3 B. & A. 440; *Andrews* v. *Dixon,* 3 B. & A. 645; *Thornhill* v. *Huddersfield,* 11 East, 349; *Pinckney* v. *East Hundred,* 2 Saund. 374; Com. Dig., Action upon the case upon Stat. (a), (a 1).

The penal damages may be recovered in an action on the bond. c. 96, § 18.

The amount to be recovered depends not upon the penalty of the bond, but upon § 12. The bond was taken to furnish security for costs, and return; or in lieu of the wood, its value, with all damages incidentally springing out of the replevin and accruing to the plaintiff in accordance with the statute.

There is no analogy between the statute provisions in replevin and those in regard to poor debtors. There is no provision in the statute on replevin analogous to § 38, giving the penal damages on failure of the poor debtor to "fulfill the condition of such bond."

*S. & J. W. May,* for the defendants.

The defendants are not liable for any more wood than was actually replevied. Master has proved that to be six hundred cords.

The writ having been abated, the court could not render judgment for a return at the next term. The writ had become a nullity. *Greeley* v. *Currier,* 39 Maine, 518.

The plaintiff being out of court, by reason of abatement, could not be heard. Not being able to be heard, he is not estopped by the judgment. *Greeley* v. *Currier, supra.*

The court had no purpose or authority to render judgment for a return of more wood than was actually replevied.

The judgment was not intended to go beyond the amount of wood actually replevied, and the court should change the record made by the clerk if it means otherwise.

The plaintiff who attached the wood cannot be held responsible to the attaching creditors for any more wood than he actually attached, and in this suit can recover for no more than was replevied. For any wood attached and not replevied he must have some other remedy.

For some purposes, the judgment for return may be conclusive upon the party, but the question of damages is still left open. *Davis* v. *Harding*, 3 Allen, 302; *Flagg* v. *Tyler*, 6 Mass. 33; *Mattoon* v. *Pearce*, 12 Mass. 406; *Parker* v. *Simonds*, 8 Met. 205; *Bartlett* v. *Kidder*, 14 Gray, 449.

The judgment fixed upon no specific quantity of wood as having been replevied.

A judgment, determined upon defects in the writ and proceedings, and not upon a trial of its merits, presents no estoppel to further proceedings to determine the rights of the parties. *Walbridge* v. *Shaw*, 7 Cush. 560; *Wilber* v. *Gilmore*, 21 Pick. 253.

The quantity stated in the writ is 952 cords. Now, less is claimed. The judgment for less must have been founded upon testimony *aliunde*, which is unlawful. *Greeley* v. *Currier, supra.*

The bond not being a statute bond, the measure of damages must be the same as if an action of trespass had been brought against the coroner. *O'Grady* v. *Keyes*, 1 Allen, 284.

The amendment of the coroner's return upon the replevin writ having been made by leave of court, must be regarded as the original return. It was made prior to the hearing before the master. *Fairfield* v. *Paine*, 23 Maine, 498.

There are no third parties' rights to be affected by the return. The parties whom the plaintiff represents are his *cestuis que trust. Howe* v. *Handley*, 28 Maine, 241. Their rights depend upon his, and their claim for damages, by reason of the replevin, is limited to

the amount which he is actually entitled to recover. *Farnham* v. *Moore*, 21 Maine, 510 ; *Bartlett* v. *Kidder*, 14 Gray, 449.

The bond being a common-law bond, entitles the obligee to common-law damages only. *Howe* v. *Handley*, 28 Maine, 251.

R. S., c. 96, §§ 11, 12, do not apply to a common-law bond. Upon the question of damages, counsel cited *Pettygrove* v. *Hoyt*, 11 Maine, 66 ; *Smith* v. *Dillingham*, 33 Maine, 387 ; *Davis* v. *Harding*, 3 Allen, 303 ; *Howe* v. *Handley*, *supra ;* *Melvin* v. *Winslow*, 10 Maine, 397 ; *Swift* v. *Barnes*, 16 Pick. 194 ; *Parker* v. *Simonds*, 8 Met. 205.

The damages must be based upon the value of the wood when taken and not when ordered to be returned, because the bond was not a statute bond. *Gordon* v. *Jenney*, 16 Mass. 469 ; *Smith* v. *Dillingham*, *supra ;* *Parker* v. *Simonds*, *supra*.

Where there is no judgment for damages and no statute bond, the measure of damages can be assessed only at six per cent. No twelve per cent damages are to be allowed during the delay occasioned by the replevin, when the proceedings are quashed by reason of the insufficiency of the bond.

DANFORTH, J. This is an action upon a replevin bond in which the defendants have been defaulted. The question presented is the amount of damages which the plaintiff is entitled to recover. This, however, involves several preliminary matters which must first be settled.

1. The extent of the defendants' liability under their contract. The bond is not a statute bond, and on that ground the writ, by which the action was commenced in which it was given, was abated. It has, however, before this been decided to be valid at common law. *Tuck* v. *Moses*, 54 Maine, 115.

As a common-law contract it must receive such a construction as will, within legal principles, most effectually accomplish the intention of the parties. The bond was given for the purpose of authorizing an action of replevin. It refers to and describes the writ, and the language of the condition is, that the plaintiffs " shall prosecute

said replevin to final judgment, and pay such damages and costs as the said A. T. Tuck shall recover against them, and shall also return and restore the same goods and chattels in like good order and condition as when taken, in case such shall be the final judgment in said suit."

This condition is in the usual form of replevin bonds, and such as is prescribed by the statute. Further than this there is no provision in the statute in relation to the bond, except as to the amount of the penalty, and none whatever regulating the liabilities of the obligors under it. The replevin suit and the liabilities of the plaintiff in case he fails to sustain his action are, in a great measure, regulated by statute.

The suit is tried without regard to the bond, and it is only when the plaintiff fails and final judgment is rendered against him, and on neglect to comply with that judgment, that the defendant has any occasion to resort to his bond. The statute has attached certain incidents to that judgment, such as damages for the taking of the property, which may or may not be incorporated into it. That the language of this bond is sufficient to require a compliance with the judgment, there can be no doubt. As the judgment and its incidents cannot be well separated, it would seem to be sufficient to require a compliance with all those liabilities which necessarily follow that judgment. Such has been the judicial construction of language similar to this, independent of any statute provision. *Smith* v. *Dillingham*, 33 Maine, 384.

Both from principle and authority we must hold the language of this bond as sufficiently broad to hold the obligors liable to fulfill the judgment in the replevin suit, and all the obligations legally resulting therefrom. In other words, the language of the condition being the same as that in a statute bond, it must receive the same construction, for both are construed by the principles of the common law and not by statute.

2. Of the final judgment in the replevin suit. What is its force and effect?

The writ in the replevin suit was abated, and the defendant had

judgment for a return of the property and for his costs. It is, however, contended that this judgment, so far as it relates to the return, is not conclusive between the parties. But if it is a judgment, as between the parties, it must be conclusive upon all questions settled by it, as long as it stands. This is the universal rule to which it is believed there is no exception. *Granger* v. *Clark*, 22 Maine, 128; *Walker* v. *Chase*, 53 Maine, 258.

That this was a judgment of the court, regularly rendered, there can be no doubt. It is by statute the final judgment in a replevin suit. It involves all the characteristics of a judgment. It is made up as the result of a hearing of the parties upon the production of legal and competent testimony. It involves an inquiry into and an adjudication upon the merits of the question at issue, and will be rendered only as law and equity shall require. It does not, as a matter of course, follow the previous result of the suit. *City of Bath* v. *Miller*, 53 Maine, 315, 316; *Wheeler* v. *Train*, 4 Pick. 168; *Simpson* v. *McFarland*, 18 Pick. 427; *Whitwell* v. *Wells*, 24 Pick. 33; *Ingraham* v. *Martin*, 15 Maine, 373.

In *Bath* v. *Miller*, above cited, such a judgment was held and treated as conclusive between the parties. The quantity of the wood replevied was a question in controversy. The writ and return of the officer thereon are a part of the record. The writ states distinctly the property to be replevied; the return, unlike that in *Miller* v. *Moses*, 56 Maine, 128, states just as distinctly the property replevied; and the judgment, differing in the same respect from that in *Miller* v. *Moses*, sets out with similar precision the exact property to be returned.

But it is said the court had no jurisdiction, because the writ was abated at one term and the judgment was rendered at another, when there was no writ or bond in court.

The record shows the facts to be as stated, but the consequence claimed does not follow.

The action is not disposed of until the question of return is acted upon. That is the final judgment in the case, and until that is rendered both parties are in court with a right to be heard, and in this

Tuck *v.* Moses.

case it appears from the record that the action was continued for a hearing upon the motion for a return.

It is further said, that the present defendants had no legal right to offer any testimony on that hearing, the writ having been previously abated; and the case of *Greeley* v. *Currier*, 39 Maine, 516, is relied upon. Whether this case is or is not good law we have no occasion at this time to decide; for, if it was not competent for the defendants to introduce other testimony on the hearing as to what judgment should be rendered, it certainly follows that such testimony cannot now be introduced to vary or control that judgment after it is rendered.

As to the amended return of the officer, if that is to be received as testimony, it would not follow that the judgment is wrong. It does not show that the whole amount of wood claimed in the writ was not replevied. Whether one return is true or the other, the judgment still remains the same. But the amendment comes too late to affect the judgment. The return at most is but evidence, upon which the judgment is founded, and after it has once been rendered, an amendment of the return can no more be received to change or control it, than can other evidence. Whether it may or may not be received as testimony in the proper process for reversing the judgment, is a question not now before us.

But independent of any legal principles involved in this judgment, the defendants in their bond have virtually agreed that it shall be binding upon them. They have agreed to pay such damages and costs as shall be recovered against them, and shall return the property if " such shall be the final judgment in said suit." Such has been the " final judgment in said suit," and the plaintiff now asks, that they shall simply abide by what is written in the bond. Of that they cannot complain if they are held. In the replevin suit, the then plaintiffs, now defendants, ordered certain specific wood to be replevied; by their officer they say that such wood was replevied and they received it. They have failed to make good their title, and after an opportunity for a full hearing, final judgment has been rendered that the same wood be returned; and this, by their bond, they have agreed to do.

We know of no principle of law or equity that will now permit them to contradict, vary, or control the effect of these acts, this judgment, and this contract.

This brings us to the question of damages. What shall the amount be? This question, so far as it is not settled by the judgment, is undoubtedly open to the defendants. That has settled the quantity of wood to be returned, but not its value, nor the extent of the plaintiff's interest in it. These questions are open and have been heard by the master appointed by the court, upon such testimony as the parties chose to offer. The judgment for the return fixes the extent of the plaintiff's interest in the wood at the date of the replevin writ.

If the defendants could have shown by parol testimony or otherwise, that the interest of the plaintiff, in whole or in part, had, since that time, ceased to exist; or if for any reason the property, or any part of the proceeds, on being returned to him would at once have reverted to the defendants, it would have been competent for them to have done so, notwithstanding the order to return, in mitigation of damages. Such is the reasonable doctrine, for it is simply a question of actual damage to the plaintiff or those he represented. It could be no damage to him to withhold that which he had no right to receive, or having received he would be under legal obligation to return. So far the authorities go in permitting a modification of the language of the judgment, but no further. *Davis* v. *Harding,* 3 Allen, 302; *Bartlett* v. *Kidder,* 14 Gray, 449, and cases cited.

But the defendants have failed to produce any such testimony. On the other hand the report of the master shows that the plaintiff's interest is that of an attaching officer; that judgments have been obtained in the suits in which the wood was attached, and executions issued thereon which are still unsatisfied; that the full value of the wood will not be sufficient to satisfy them, and that the proper steps were taken to keep the attachment good.

The plaintiff, then, is entitled to receive, as one item of damages, the full value of the wood. But at what time is that value to be

fixed? The master finds the value at the time it should be returned under the judgment, as much larger than the value as fixed in the writ at the time it was replevied. That the plaintiff in replevin is bound by the value which he puts upon the property in his writ, may now be considered as well-settled law. So that in case of depreciation in value by use, decay, fall in the market price, or otherwise, the loss is his and he cannot avail himself of it in mitigation of damages. *Howe* v. *Handley*, 28 Maine, 251; *Gordon* v. *Jenney*, 16 Mass. 469; *Huggeford* v. *Ford*, 11 Pick. 223; *Parker* v. *Simonds*, 8 Met. 211.

But with the defendant in replevin it is otherwise. As he has no hand in fixing the value in the writ, he is not estopped from showing it to be greater than is there stated. *Thomas* v. *Spofford*, 46 Maine, 408.

In the case at bar the increase in the value of the property must have arisen from an increase in its market price. As the property was wrongfully taken by the then plaintiffs, there would seem to be no reason why they should be permitted to have the advantage of that which would justly have accrued to the then defendant if the property had remained in his possession as the law required. Besides, the defendants' contract requires them to return the property "if such shall be the final judgment" of the court. That contract was broken when, and only when, the judgment was rendered. If they do not return the property, the damage to the plaintiff would evidently be its fair value at that time. This would be analogous to the law of damages growing out of a breach of ordinary contracts for the delivery of property. This principle was adopted in the case of *Swift* v. *Barnes*, 16 Pick. 194, and was also recognized as sound law in similar cases, in *Parker* v. *Simonds*, 8 Met. 211, though this latter case was excepted from its operation on the ground that the property there had fallen in value and not risen. Therefore, the other principle was applied, viz., that the plaintiff in replevin was bound by his own valuation. In *Thomas* v. *Spofford*, before cited, Kent, Justice, in giving the opinion of the court, on page 410, says, " It seems clear on the authorities

and from reason, that the defendant in replevin is not concluded or estopped by the sum named in the bond as the actual value. And the insertion of the same in the execution, by the inadvertence of the clerk, cannot, in our judgment, estop the party from proving the actual value at the time of the taking, or the time of the demand."

It follows that the defendants in this case are liable for the value of the property at the time of the breach of their contract, Nov. 18, 1865, found by the master to be ($4,695) four thousand six hundred and ninety-five dollars. To this is to be added a sum equal to legal interest from that time to such time as judgment shall be entered up in this case. Also, the amount of the costs in the replevin suit, viz., $15.68, with interest for the same time. As the plaintiff holds the wood as an attaching officer, and the service of the execution was delayed by the replevin, the statute provides a penalty of not less than twelve per cent on the value of the goods attached while the execution is so delayed.

This is one of the legal incidents of the judgment in the replevin suit, and, as it was not recovered in that suit, it may be recovered in this action upon the bond. As there is no proof that the wood was of any greater value than that alleged in the writ, until the judgment in the replevin, and as in the contemplation of the statute the service of the execution is not delayed by the replevin beyond the date of the judgment for a return in that suit, this sum is to be ascertained by reckoning the twelve per cent upon the value of the wood as stated in the replevin writ from the time of the judgment in the suit in which it was attached to the date of the judgment for a return in the replevin suit. In brief, the damages are to be made up thus,—1st, the value of the wood at the date of the judgment in the replevin suit, viz., $4,695, with interest at six per cent on that sum, from the date of that judgment, Nov. 18, 1865, to the date of the judgment in this action; 2d, the costs in the replevin suit, $15.68, with interest for the same time; and 3d, a sum equal to twelve per cent on the value of the wood at the time it was replevied, $2,820, from the date of the judgment in the suit

in which it was attached, viz., April 22, 1863, to the date of the judgment in the replevin suit, viz., Nov. 18, 1865.

These several sums added together make an aggregate of seven thousand one hundred and forty-seven dollars and forty-two cents ($7,147.42), and judgment must be rendered for that sum.

APPLETON, C. J.; WALTON, BARROWS, and DICKERSON, JJ., concurred.